IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| BEVERLY PORGES, | ) |
| Plaintiff, | ) Case No. 09 C 3705 |
| v. | ) Judge Virginia M. Kendall |
| WAL-MART STORES, INC., d/b/a SAM'S CLUB, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Beverly Porges (Porges) filed suit against Wal-Mart Stores, doing business as Sam's Club (Sam's Club), alleging careless and negligent acts and omissions that led to her sustaining personal injuries when she tripped and fell on a floor mat in the store's entrance. After timely removing to this Court, Sam's Club moves to strike Porges's expert Gary Hutter's ("Hutter") report and bar him from testifying. Sam's Club also moves for summary judgment. For the following reasons, the Court grants Sam's Club's Motion to Strike Gary Hutter's Expert Report and Bar him from Testifying. The Court also grants Sam's Club's Motion for Summary Judgment.

## STATEMENT OF UNDISPUTED FACTS[1]

Porges was eighty-two years old on the afternoon of February 20, 2009, when she went to the Wheeling, IL Sam's Club to replace her membership card. (P 56.1 Resp. ¶ 5; P 56.1 Add. Facts Ex. 1.) It was a sunny day and Porges parked her car near the entrance and walked towards the store

---

[1] Throughout this Opinion, the Court refers to the Parties' Local Rule 56.1 Statements of Undisputed Material Facts as follows: citations to Sam's Club's Local Rule 56.1(a)(3) Statement of Undisputed Facts have been abbreviated to "D 56.1 Ex. __."; citations to Porges's Answers to Defendants' Local Rule 56.1(a)(3) Statement of Undisputed Facts have been abbreviated to "P 56.1 Resp. ¶ __."; citations to Porges's Statement of Additional Material Facts under LR. 56.1(b)(3)(C) have been abbreviated to "P 56.1 Add. Facts Ex. __."

carrying only her purse. (P 56.1 Resp. ¶ 5.)

The entrance to this Sam's Club location had a first set of doors, followed by a vestibule area, and then a second set of doors. (*Id*.) The vestibule area had shopping carts along one side and large mats on the floor. (*Id*.) Two mats ran parallel to each other and perpendicular to the entrance doors and one mat ran parallel to the entrance doors. (*Id*. ¶ 10.) While Sam's Club does not have any written policies regarding when floor mats should be laid out in the store, they are generally placed whenever there is an accumulation of "any kind of wetness." (*Id*. ¶ 6.) This configuration of the vestibule mats—two parallel mats and one perpendicular one—make them more stable and flatter. (*Id*.)

At 1:37:47 p.m., before Porges entered the store, a male customer entered the Sam's Club. (*Id*. ¶ 10.) At the time he entered the store, the vestibule floor mats were flat on the ground without any curled up edges. (*Id*.) As he walked over the mats, however, he inadvertently kicked up the edge of the parallel floor mat and caused a portion of it to flip over itself. (*Id*.) The male customer looked down at the mat but continued walking without readjusting the floor mat. (*Id*.) Shortly after, three other customers walked into the vestibule area, but none of them walked over the upturned mat. (*Id*.) Two more customers then entered the store and walked over the floor mats without falling. (*Id*.)

Less than a minute after the male customer caused the mat to flip over itself, Porges entered the store at 1:38:24 p.m. (*Id*.) After passing through the first set of doors, she entered the vestibule area. (*Id*. ¶ 5.) Porges saw the Sam's Club People Greeter, Onkar Sharma ("Sharma") standing near the second set of doors just beyond the vestibule area. (*Id*.) Sharma was assisting other customers with a sales return. (*Id*. ¶ 8.) As Porges was walking through the vestibule, she tripped and fell on

2

the upturned parallel floor mat that the male customer had inadvertently kicked up thirty-nine seconds earlier. (*Id.* ¶ 10.) Porges fell to the floor, landing on the front side of her body and face. (*Id.* ¶ 5.) Porges did not see that the floor mat was upturned before she tripped on it and fell. (*Id.*)

Sharma, who did not see Porges or the flipped up mat until after she fell, immediately went to assist Porges at 1:38:32 p.m. and help her stand up. (*Id.* ¶¶ 8, 10.) Sharma then flattened out the flipped up floor mat. (*Id.* ¶ 10.) Other customers came to Porges's aid as well and helped her to walk from the vestibule area into the store. (*Id.*) Once inside the store, a Sam's Club Assistant Manager, Catherine Hepner ("Hepner"), spoke to Porges. (*Id.*) An ambulance was called and picked Porges up. (*Id.*) At 1:40:00 p.m., Sharma rolled up and removed all of the floor mats from the vestibule area. (*Id.*)

Porges suffered a tear in her rotator cuff and two of her teeth were knocked loose as a result of her fall. ( P 56.1 Add. Facts Ex. 17-18.)

The events surrounding Porges's fall were caught on surveillance cameras. (P 56.1 Resp. ¶ 9.) The tape of the video surveillance is undisputed and accurately reflects the events described above, including the timing of the upturned floor mat and Porges's fall. (*Id.* ¶ 5.)

According to Store Manager Daniel Panknen ("Panknen"), no customers have ever fallen in the vestibule area of Sam's Club prior to Porges. (*Id.* ¶¶ 6-7.) Sharma, the greeter who is stationed near the vestibule area, has never seen anyone fall in the vestibule area. (*Id.* ¶ 8.) Hepner had never observed any customers causing the floor mat in the vestibule area to bunch up or flip over itself. (*Id.* ¶ 7.)

Hepner does not recall what the weather was like the day before Porges's fall, but she

suspects that the floor mats could have been left from the night before.[2] ( P 56.1 Add. Facts Ex. 12.) Generally, the People Greeter at Sam's Club is responsible for placing the floor mats down but Sharma cannot recall who placed the mats down the day of Porges's fall. (*Id*. at 11.)

Porges filed suit in the Circuit Court of Cook County on May 26, 2009. Sam's Club timely removed to this Court on June 16, 2009.

## **STANDARD OF REVIEW**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *See Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chi. Sch. Reform Bd. Of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minn. Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("'Rule 56 demands something more specific than the bald assertion of the general truth of a particular

---

[2] Hepner's deposition testimony is unclear on this point. Q: "Do you know why the mats were placed . . . at the front entryway of the Sam's [Club] in Wheeling on February 20, 2009?" A: "The only thing, I can't remember what the weather was the night before. It could have been left from the night before and supposed to be picked up in the morning. I can't say for sure."

4

matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.'").

**I.       Motion to Strike**

Sam's Club moves to strike Hutter's expert report and to bar him from testifying. Specifically, Sam's Club claims that Hutter's report and testimony are unreliable and would not aid the trier of fact.

The admissibility of scientific expert testimony is governed by Federal Rule of Evidence 702 ("Rule 702") and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). *See Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). Rule 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702. Courts apply a three-step admissibility analysis for expert testimony under Rule 702 and *Daubert*. *See Ervin*, 492 F.3d at 904. First, "the witness must be qualified 'as an expert by knowledge, skill, experience, training, or education.'" *Id.* (quoting Fed. R. Evid. 702). Second, "the expert's reasoning or methodology underlying the testimony must be scientifically reliable." *Id.* (citing *Daubert*, 509 U.S. at 592-93). Courts, however, are granted "broad latitude when [they] decide[] *how* to determine reliability." *Kumho Tire Co. v. Carmichael*, 526 U.S 137, 142 (1999). Finally, the expert's testimony must be relevant, or "assist the trier of fact to understand the evidence or to determine a fact in issue." *See Ervin*, 492 F.3d at 904.

    **A.       Qualifications and Methodology**

"A judge is not obliged to look into the questions posed by Rule 702 when neither side either

requests or assists." *U.S. v. Moore*, 521 F.3d 681, 685 (7th Cir. 2008). Here, while Sam's Club argues that Hutter lacks training and certification regarding retail practices and retail safety, it does not directly challenge Hutter's qualifications. As such, the Court finds that Hutter, a Certified Safety Professional with a Ph.D. in Environmental and Occupational Health Studies, satisfies this element of the Rule 702 analysis.

**B. Reliability**

Sam's Club challenges the reliability of Hutter's report and proposed testimony regarding the analysis of its floor mats. Specifically, Sam's Club argues that Hutter's opinions are speculative and inherently unreliable because Hutter never examined the actual floor mat that Porges tripped over.

Before considering whether the testimony "will assist the trier of fact to understand or determine a fact in issue," a district court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid." *Daubert*, 509 U.S. at 592-93. Rule 702 allows experts to testify if the testimony is based on sufficient facts or data; the testimony is the product of reliable principles and methods; and the expert applies the principles and methods reliably to the facts of the case. Fed. R. Evid. 702. The Supreme Court has set forth the following non-exhaustive list of guideposts: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether it has been generally accepted within the relevant scientific community. *Id.* at 593-94.

Here, Hutter's analysis consisted of viewing the video surveillance tape of Porges's February 2009 fall and visiting Sam's Club on May 24, 2010 to examine the various mats that Sam's Club

6

kept in storage. At the May 2010 on-site inspection, Hutter examined the floor mats that were in a storage area in the back of the Wheeling, IL Sam's Club but did not look at or examine the actual floor mat that Porges tripped on. (R. 37, Exh. A ¶ 8(e).) Nor was Hutter able to identify the type of floor mat that was used in the vestibule in February 2009, or compare the types of mats used in the vestibule to the types of mats that he examined in the storage area. (*Id.* ¶ 9(e).)

Hutter noted that the mats that he was able to see were rolled into "tight rolls" and that they were stored in a way that allowed for their ends and edges to curl. (*Id.* ¶¶ 5-6.) Hutter unrolled several of the stored floor mats to view them and examine their level of wear and tear. (*Id.* ¶ 8.) Hutter observed the extent to which they retained their curl and the ease of flipping over a corner or edge of the mat. (*Id.*) Hutter found that several of the storage area floor mats had significantly worn edges and thought that they should be removed from service. (*Id.* ¶ 8(g).) Hutter also found that there were at least three different types of floor mats in the storage area, differing in "size, thickness, surface treatment, wear, dirtiness, and flexibility." (*Id.* ¶ 8(a).) Hutter could not identify the age or manufacturer of all of the mats, nor could he identify where in the store these mats would be or had been placed. (*Id.* ¶¶ 4, 9.) Indeed, it is not clear from Hutter's expert report which of the mats that he examined were still in use by Sam's Club and still placed in public areas where customers would encounter them. (*Id.* ¶ 9(f).)

At one point, Hutter unrolled and calculated the "typical force levels needed to roll the edge of a mat over onto itself," finding that the these "levels were typically less than five pounds." (*Id.* ¶ 8(f).) Hutter concluded that it would be "easy for a person's foot to produce this type of force level while walking." (*Id.*) Hutter noted that the thinnest and most pliable type of floor mats had edges that were the easiest to flip over, but he could not conclude that this was the type of mat used

7

in the vestibule area—on the day of his visit or, more importantly, on the day that Porges tripped. (*Id.* ¶¶ 9, 10.)

In fact, Sam's Club primary argument is that Hutter did not examine the floor mat that Porges actually tripped over. Moreover, Hutter examined the mats fifteen months after Porges's fall and was therefore unable to comment on the level of wear and tear of the mats in use at Sam's Club in February 2009, or the level of wear and tear of the specific mat that Porges tripped over at the time she tripped over it. "An expert's speculations about a hypothetical condition does not create a triable issue of fact as to the existence of that condition." *Schwarz v. FedEx Kinko's Office*, 2009 WL 3459217 at *12 (S.D.N.Y. Oct. 27, 2009) (Katz, M.J.) (striking expert's opinions about the level of wear and tear on a floor mat, even though the expert had a sample of the actual mat that the plaintiff tripped over, because the expert received the sample months after the accident and therefore could not testify to the level of wear and tear at the time of the accident). Given the lack of any evidence that the floor mats that Hutter tested were similar to the mat that Porges tripped on, Hutter's examination of the surveillance tape is insufficient to demonstrate causation.[3] *See Bourelle v. Crown Equip. Corp.*, 220 F.3d 532, 537 (7th Cir. 2000) (striking expert in part because he "never saw or inspected the vehicle itself (only pictures and videotape).").

Hutter mentioned that "safety literature and mat providers are aware of the unreasonable dangers of mis-application of mats and have identified means to reduce and eliminate this hazard." (R. 37, Exh. A ¶ 15.) Hutter, however, did not reference specific safety guidelines that required

---

[3] The Court notes that the video surveillance footage does not demonstrate that the floor mat was curled up in any way prior to the earlier customer making contact with it. Hutter's analysis of the ease in which the floor mats rolled up in a storage area of Sam's Club's can be flipped over is rendered less reliable by the fact that Sam's Club employees had never witnessed the vestibule floor mats to be bunched up or to be the cause of any customer complaints or injury prior to Porges's fall.

fastening of mats to the floor, nor did he discuss whether the five pounds of force required to flip over the mats in storage was in violation of workplace standards. *See, e.g., Hatfield v. Wal-Mart Stores, Inc.*, 335 Fed. App'x 796, 800 (10th Cir. 2009) (noting that trial court correctly struck expert as unreliable due to his failure to cite to "any publication stating an industry standard" for the "placement of [floor] mats"). Indeed, it is unclear from the expert report which of the mats that Hutter examined were used in the public areas of the Sam's Club where customers would encounter them, let alone in the vestibule fifteen months earlier. (R. 37, Exh. A ¶ 9) (noting that some of the mats that Hutter inspected may be used in food preparation areas).

In sum, Hutter's report does not provide any evidence of the condition of the mat that Porges tripped over—the type of mat, its level of wear and tear, its ease of flipping over onto itself—and therefore there is no indicia that his tests are connected to the actual mat that Porges tripped over.

Because Hutter's cursory examination did not involve the mat that Porges tripped over, the Court does not find his report reliable.

### C. Relevance

"Testimony is relevant if it helps the trier of fact in understanding the evidence or in determining a *fact* at issue." *Masters v. Hesston Corp.*, 291 F.3d 985, 991 (7th Cir. 2002) (emphasis added). Although experts may provide opinions as to the ultimate factual issues in a case, *U.S. v. Pansier*, 576 F.3d 726, 738 (7th Cir. 2009), they may not testify "as to legal conclusions that will determine the outcome of the case" under Rule 702. *Good Shepard Manor Found. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003) (excluding expert testimony that consisted of legal conclusions); *see also, e.g.*, *In re Ocean Bank*, 481 F. Supp. 2d 892, 898 (N.D. Ill. 2007) ("Expert testimony as to legal conclusions that will determine the outcome of a case is inadmissible.").

9

"Where the proffered expert offers nothing more than a 'bottom line' conclusion, he does not assist the trier of fact." *Clark v. Takata Corp.*, 192 F.3d 750, 759 (7th Cir. 1999).

Here, Sam's Club argues that because Hutter's only examination of the floor mat that Porges actually tripped over is through the surveillance footage, his report and testimony are not useful to the triers of fact. The Court agrees that the absence of a link between the floor mats that Hutter examined in the storage area of Sam's Club and the mat that Porges tripped over fifteen months earlier challenges the relevance of his proposed testimony. Moreover, the surveillance video, which the triers of fact are able to watch themselves, does not support any argument that the floor mat that Porges tripped over had a curled edge prior to the other customer flipping the mat onto itself. To the extent that Hutter claims his testimony goes to the low level of force required to flip a mat onto itself, this is based on mats Hutter examined in storage fifteen months after Porges tripped. It is also contrary to the experience of Sam's Club employees, as there is no evidence that any Sam's Club customers or employees saw or were injured by a flipped up floor mat prior to Porges's fall or in the intervening fifteen months. As such, the Court finds that Hutter's expert report and proposed testimony are not relevant.

Because the Court finds Hutter's expert report to be unreliable and unhelpful to a trier of fact, it grants Sam's Club's Motion to Strike Gary Hutter's Expert Report and Bar him from Testifying. The Court next considers Sam's Club's Motion for Summary Judgment.

## II. Motion for Summary Judgment

Porges alleges that Sam's Club negligently maintained the entryway to its Wheeling, IL store. Both parties set forth similar standards for finding liability: (1) where the dangerous condition was created by the negligence of the proprietor or his servants; (2) if the proprietor or his servant

knew of the dangerous condition, regardless of how it was created; or (3) if the dangerous condition existed for a sufficient length of time such that its presence should have been discovered through the exercise of ordinary care. *See, e.g., Pavlick v. Wal-Mart Stores, Inc.*, 753 N.E.2d 1007, 1010 (Ill. App. Ct. 2001). The Court construes this standard and Porges's Complaint as implicating both premises liability and negligence and, as such, will address each in turn. *See, e.g., Reed v. Wal-Mart Stores, Inc.*, 700 N.E.2d 212, 215 (Ill. App. Ct. 1998) (interpreting plaintiff's complaint that alleged defendant both caused and maintained a dangerous condition to raise both premises liability and negligence causes of action).

      A.      **Premises Liability**

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees . . . and fails to exercise reasonable care to protect them against the danger." *Madden v. Paschen*, 916 N.E.2d 1203, 1213-14 (Ill. App. 2009). Therefore, to maintain a premises liability claim under Illinois law, a plaintiff must demonstrate that the defendant knew about a condition on its premises causing an "unreasonable risk of harm" to its customers, or that the defendant would have discovered such a condition by the exercise of reasonable care. *See, e.g., Gentry v. Shop 'n Save Warehouse Foods, Inc.*, 708 F. Supp. 2d 733, 736-37 (C.D. Ill. 2010) ("The landowner must know of the condition or would have discovered the condition through the exercise of reasonable care."). A defendant's knowledge of an "unreasonable risk of harm can be established through either actual or constructive notice." *Little v. Wal-Mart Stores, Inc.*, 2011 WL 248557 at *4 (N.D. Ill. Jan. 25, 2011) (Holderman, C.J.) (citation omitted). "Illinois courts have recognized that landowners are not

11

liable to business invitees for injuries arising from known and obvious hazards on the land." *Wind v. Hy-Vee Food Stores, Inc.*, 650 N.E.2d 258, 262 (Ill. App. Ct. 1995).

### i. Actual Notice

Here, there is no evidence that Sam's Club had actual notice of the upturned floor mat. The only Sam's Club employee monitoring the vestibule—the store greeter, Sharma—states that he did not see the upturned floor mat before Porges tripped on it and this fact is undisputed. Moreover, Sharma explained that he was also in charge of assisting and directing customers with product returns, which he was doing when Porges entered the store and tripped.

Porges does not present any facts that demonstrate that Sam's Club or its employees were aware that the floor mats posed a hazardous condition. *See, e.g., Little*, 2011 WL 248557 at *4 (finding no actual notice where defendants did not know of raised edge in vestibule floor mats and no evidence of prior accidents or complaints regarding such a condition). Nor does Porges present any evidence demonstrating that Sam's Club had received complaints about the floor mats from previous customers; indeed, Sam's Club employees confirmed that they had not received any customer complaints about their vestibule floor mats. *See, e.g., Gentry*, 708 F. Supp. 2d at 737 (granting summary judgment to defendant on issue of premises liability where plaintiff did not present evidence that defendants had received complaints about floor mats or their placement). Porges also fails to present any evidence that the actual mat that she tripped on had any defects.[4]

Therefore, there is no evidence that Sam's Club had actual notice of any unreasonably harmful floor mats in its store or of a specific upturned floor mat in the vestibule at the time Porges

---

[4] The Court notes that even if it had not struck Porges's expert testimony, she would still be unable to demonstrate that the floor mat that she tripped on was defective or frayed because she never inspected the floor mat that she actually tripped on. *Cf. Wind.*, 650 N.E.2d at 263 (noting that plaintiff had "some evidence" that the mat she tripped on was "poorly maintained and in poor condition on the day of the accident.").

entered the store.

### ii. Constructive Notice

There is no evidence that Sam's Club had constructive notice of the upturned floor mat. Stores such as Sam's Club have "no duty of continuous inspection." *Peterson v. Wal-Mart Stores, Inc.*, 241 F.3d 603, 605 (7th Cir. 2001). Where constructive notice is alleged, "of critical importance is whether the substance that caused the accident was there a length of time so that in the exercise of ordinary care its presence should have been discovered." *Reid v. Kohl's Dep't Stores, Inc.*, 545 F.3d 479, 481-82 (7th Cir. 2008) (quotation marks and citation omitted); *Thompson v. Econ. Super Marts, Inc.*, 581 N.E.2d 885, 888 (Ill. App. Ct. 1991) (noting that the time element is the material factor in establishing constructive notice). While there is no "bright line rule" governing how long a condition must exist before a store owner or employee would be on constructive notice of it, a plaintiff may prove constructive notice by "establishing that the condition persisted long enough that the defendant should have discovered the condition through the exercise of reasonable care." *Id*. at 483 ("Illinois law recognizes that there is no bright-line rule indicating the requisite time to establish notice"); *Lombardo v. Reliance Elevator Co.*, 733 N.E.2d 874, 882 (Ill. App. Ct. 2000). Courts look to the "circumstances of the particular case to determine if the length of time gave rise to notice." *See id*. at 483 (noting that a department store's failure to notice a spilled milkshake on its floor for up to ten minutes on a quiet day was not enough time to provide the store with constructive notice of the hazard).

Here, it is undisputed that the floor mat was upturned for thirty-nine seconds before Porges entered Sam's Club and tripped on it. (P 56.1 Resp. ¶ 10.) Porges does not cite to any caselaw finding such a short period of time to put a store owner or its employees on constructive notice of

13

the hazard. Moreover, Porges does not present any evidence establishing a "pattern of conduct or a recurring incident" that would have put Sam's Club on constructive notice of the hazardous floor mat. *See, e.g., Little*, 2011 WL 248557 at *4 (finding constructive notice of hazardous floor mats where customer tripped on a floor mat and Wal-Mart employees had previously noticed weekly separation between the floor mats that caused gaps and raised edges). In fact, the undisputed facts demonstrate that no Sam's Club employee was aware of any customer complaints or falls due to their vestibule floor mats. *Cf. Culli v. Marathon Petroleum Co.*, 862 F.2d 119, 126 (7th Cir. 1988) (noting that liquid spills on a daily basis at a gas station constituted a "pattern of dangerous conditions which were not attended to within a reasonable period of time" and may be used to establish liability). Therefore, Porges is unable to demonstrate that Sam's Club had constructive notice of the upturned floor mat.

Because Porges has failed to present evidence that the floor mats presented an unreasonable risk that Sam's Club knew about or would have known about through the exercise of reasonable care, she is unable to demonstrate that Sam's Club or its employees had actual or constructive notice of the hazard. As such, Porges cannot prevail on a premises liability claim. *See Reid*, 545 F.3d at 483 (finding no liability where plaintiff failed to show that the department store knew or should have known of a hazard).

**B.      Negligence**

Sam's Club may nonetheless be liable if it or its employees negligently created the hazardous condition. Notice is not required where there is evidence that defendants were involved in creating a hazard. *See, e.g., Reed*, 700 N.E.2d at 214 ("a plaintiff does not need to prove actual or constructive notice when she can show the substance was placed on the premises through the

14

defendant's negligence."). To state a cause of action for negligence, a plaintiff must "allege facts sufficient to demonstrate the existence of a duty, a breath of that duty, and injury that was proximately caused by that breach. *Ciciora v. CCAA, Inc.*, 581 F.3d 480, 482 (7th Cir. 2009). Courts, however, are "not require[d] [] to fill in evidentiary gaps that [a plaintiff] has left wide open." *Adkins v. Meijer Stores Ltd. P'ship*, 256 Fed. App'x 845 at *2-3 (7th Cir. 2007).

### i. Negligent Placement

When an allegedly dangerous substance has been placed on the premises by a landowner, liability is imposed on the landowner if the plaintiff can show that the substance was placed there through the landowner's negligence. *See Donoho v. O'Connell's, Inc.*, 148 N.E.2d 434, 437-38 (Ill. 1958). "[T]he use of ordinary floor mats to assist pedestrians is perfectly reasonable, and the fact that a person trips on one of them is no evidence of negligence." *Robinson v. Sw. Bell Tel. Co.*, 167 N.E.2d 793, 796 (Ill. App. Ct. 1960). "When the use of mats is not reasonable, a [] store may be held liable for negligent acts and omissions related to installing and maintaining floor mats." *Gentry*, 708 F. Supp. 2d at 738 (citation omitted). "To demonstrate negligent placement of the mats, Plaintiff must show that the Defendant placed the mats on the floor in a rumpled manner or put defective mats on the floor. For negligent placement, it is insufficient to merely show that this type of floor mat becomes rumpled after customers walk on it." *Johnson v. U.S.*, 1999 WL 446694 at *4 (N.D. Ill. Jun. 23, 1999) (Coar, J.) (citing *Grimm v. Arnold*, 624 N.E.2d 432 (Ill. App. Ct. 1993)); *see also Gentry*, 708 F. Supp. 2d at 739 ("even if [plaintiff] tripped over a ripple [in the floor mat], there is no evidence that the putative ripple was related to any negligence of the Defendant.").

Here, Porges alleges that a foreign substance—the floor mat—was placed in the Sam's Club vestibule by Sam's Club employees and created the dangerous condition. To determine whether the

15

floor mats were negligently placed, the Court looks to the manner in which the floor mats were installed; the condition of the floor mats and their level of maintenance; and whether the property owner was on notice of the mat's condition. *See, e.g., Johnson*, 1999 WL 446694 at *3 (noting that "the condition of the mat and the manner in which it was placed on the floor may constitute negligent placement"); *Wind*, 650 N.E.2d at 263 (where evidence suggests negligent installation—due to use of an old floor mat and failure to abide by its usual floor mat installation practice—plaintiff need not prove defendant had actual or constructive notice).

*Wind* involved the negligent placement of a floor mat at a grocery store and its facts are instructive. 650 N.E.2d at 263. There, the plaintiff tripped on the edge of a floor mat in defendant's store on a winter day. The court found relevant that in its ordinary practice, defendant taped its floor mats to the floor, but on the day that the plaintiff was injured, a disputed issue of fact existed as to whether the mats were taped to the floor. *Id*. In addition, "some evidence" suggested that the mat that the plaintiff tripped on was in poor condition and was poorly maintained. *Id*. (plaintiff noted that the mat that was tripped over "was missing portions of its edges"). The record also contained evidence suggesting that the defendant and its employees were on notice of the mat's poor condition. Specifically, customers had noticed people stumble over the floor mats and had complained about the situation to defendant's employees. *Id*. at 260. The court concluded that, based on these factors indicating that defendant had placed defective mats on the floor or placed mats on the floor in a negligent manner, "liability may arise from [defendant's] alleged negligent acts or omissions when it installed and maintained the floor mats." *Id*. at 264.

Here, unlike *Wind*, there is no evidence that the mat that Porges tripped on was "worn out" or in otherwise poor condition. *See, e.g., Johnson*, 1999 WL 446694 at *3 (finding that

16

photographic "evidence of [other] rumpled mats does not demonstrate that the rumpled mat causing Plaintiff's fall was negligently placed on the floor."). Nor is there any evidence that Sam's Club employees had received customer complaints or were aware of separation between the mats or flipped up edges during the course of their routine maintenance and inspection of the store. Unlike *Wind*, where defendants failed to follow their traditional installation process of the floor mats on the day the plaintiff was injured, Sam's Club maintained the same installation process each day and there is no evidence that it diverged from this practice on the day that Porges tripped.

Because "the use of ordinary floor mats to assist pedestrians is perfectly reasonable, and the fact that a person trips on one of them is no evidence of negligence," and given Porges's inability to demonstrate that the mat she tripped on was defective, poorly maintained, or negligently installed, she fails to allege that Sam's Club negligently installed its vestibule floor mats on February 20, 2009. Therefore, even though the surveillance video indicates that Porges tripped on the mat because it was flipped over, her failure to show that Sam's Club placed the floor mat negligently in the vestibule is fatal to her claim. *See, e.g., Gentry*, 708 F. Supp. 2d at 739 ("without evidence of negligence, a plaintiff cannot prevail by merely showing that she tripped on the mat.").

The Court therefore finds that the undisputed facts demonstrate that Sam's Club did not negligently place the floor mat in its vestibule. As such, Porges cannot prevail on her negligence claim.

**CONCLUSION**

For the reasons stated, the Court finds that Hutter's expert report is unreliable and not relevant to a trier of fact. The Court therefore grants Sam's Club's Motion to Strike Gary Hutter's Expert Report and Bar him from Testifying. The Court also finds that Porges is unable to demonstrate facts supporting her premises liability or negligence claims. As such, the Court grants Sam's Club's Motion for Summary Judgment.

So ordered.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: March 15, 2011